AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the

### District of Montana

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>501 Montana Avenue, Missoula, Montana 59802 | )<br>)<br>)<br>)<br>)<br>) |

Case No.  MJ-20-44-M-KLD

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A - a building located at 501 Montana Avenue.

located in the _____ District of _____ Montana _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B -

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. 841(a)(1) | Distribution of Methamphetamine |
| Title 21 U.S.C. 846 | Conspiracy to Distribute Methamphetamine |
| Title 18 U.S.C. 924(c)(1)(A)(i) | Possession of a Firearm in Furtherance of a Drug Trafficking Crime |

The application is based on these facts:
See attached affidavit in support of the search warrant application, incorporated herein by reference.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Monte Shaide, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  11/17/2020

City and state:  Missoula, Montana

_____
*Judge's signature*

Kathleen L. DeSoto, United States Magistrate Judge
*Printed name and title*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF:**<br><br>**501 Montana Avenue, Missoula, Montana 59802** | **MJ 20-    -M-KSD**<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## APPLICATION FOR SEARCH WARRANT

I, Monte Shaide, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I am a Special Agent (SA) of the Federal Bureau of Investigation and

am currently assigned to the Missoula Resident Agency in Missoula, Montana.  I

have been employed as an SA for over 22 years and in that time I have had

extensive training and experience in conducting violent-crime related

investigations, including criminal enterprise investigations.  For over nine years, I

served on the Pierce County Violent Crime Task Force in Tacoma, Washington,

and the Puget Sound Task Force in Seattle, Washington.  For over 12 years, I was a

member of the FBI Montana Regional Violent Crime Task Force (MRVCTF),

1

which specializes in targeting habitual violent offenders, dismantling violent criminal enterprises, and tracking fugitives.  For the past 18 months, I served as a Supervisory Special Agent for the National Tactical Training Unit in Quantico, Virginia, providing national level program management of the FBI's Field Special Weapons and Tactics (SWAT) program and SWAT sub-programs.  Management included certification of SWAT Agents and core skills, specialized training of the SWAT teams and planning, assistance, and oversight during multiple office SWAT deployments involving high risk warrant service, tactical surveillance interdiction, and hostage rescue.  In September of 2020, I returned to the Missoula Resident Agency to resume my duties as a Special Agent assigned to the MRVCTF, combating violent criminal enterprises operating in Western Montana.

2.      I am assigned to the summarized herein, and the information contained in this affidavit is based on my own observation, training, and experience, and where noted, information provided to me by other law enforcement officers.  I have not included all the facts known to me, but rather only those facts necessary to establish probable cause.

3.      This affidavit is in support of a search warrant application for the following location in connection with an investigation into Leon Paul Kavis Jr. for Conspiracy to Distribute Methamphetamine, Possession with Intent to Distribute

2

Methamphetamine, and Possession of a Firearm in furtherance of a Drug
Trafficking Crime.

## PROPERTY TO BE SEARCHED

4.      This affidavit is made in support of an application for a search warrant
to search the following location:

A sheet metal Quonset-style garage shop located at 501 Montana Avenue,
Missoula, Montana, at the intersection of Clyde Street and Montana Avenue.  The
property contains a Quonset-style garage shop structure with silver sheet metal
siding and a metal-style composition roof.  There is a white roll-up vehicle door
located on the west side of the structure facing Clyde Street.  Just to the right of the
roll up door is a wooden sign with the numbers 501 written on the front.  Two
chimneys for exhaust and ventilation are attached to the shop and visible on both
sides of the roll up door.  Affixed to the right of the roll up door are two security
cameras mounted into the building.  On the east side of the structure is a brown
metal door, which does not appear to be used.  Scattered around the outside of the
structure are old tires, vehicles, and large container barrels near the east and west
entrances of the structure.

## PROBABLE CAUSE

1.      On March 6, 2020, FBI SA Levi Kroschel and Task Force Officer
(TFO) Amy Fitchett interviewed a confidential source (CS1), who wished to

remain anonymous for reasons of their own personal safety, regarding a drug trafficking network in Missoula, Montana. CS1, who was a subject of an FBI investigation for trafficking methamphetamine (meth), was advised of their Miranda rights, waived their rights, and provided the following information. CS1 associated with Leon Kavis and described Kavis as a source of supply for meth. CS1 was introduced to Kavis in October of 2019 by Ashley Davis, a Missoula resident. Kavis was Davis' meth supplier. From November of 2019 until the beginning of March 2020, CS1 estimated he/she purchased approximately a pound of meth directly from Kavis in Missoula during multiple transactions. The largest quantity of meth CS1 purchased from Kavis at one time was one-half pound for $500, which was a very cheap price according to CS1. Kavis sold meth in ounce quantities to other distributors, to include Ashley Davis, for approximately $500 per ounce.

2.      CS1 observed Kavis with a firearm and drugs on three different occasions. CS1 last saw Kavis with a Walther pistol sometime in the beginning of March 2020, prior to the interview. CS1 also knew Kavis had received two AK-47 assault style rifles from Victor Sebastian. Kavis told CS1 he gave Sebastian meth and cash for the two rifles. CS1 advised Kavis carries a firearm on his person as he deals large amounts of meth and uses the firearm as protection.

4

3.      On June 2, 2020, Homeland Security Investigations SA Michael

Munn and Great Falls Police Detective Adam Hunt with the Russell Country Drug

Task Force (RCDTF) based in Great Falls, Montana, interviewed a Confidential

Source (CS2), who wished to remain anonymous for reasons of their own personal

safety, regarding CS2's drug trafficking network.  CS2 had been arrested by

RCDTF Agents for possessing approximately seven ounces of meth during a traffic

stop near Sun River, Montana.  CS2, who was a subject of a Federal investigation

for trafficking methamphetamine, was advised of their Miranda rights, waived

their rights, and provided the following information.

4.      CS2 picked up the seven ounces of meth from his source of supply in

Missoula.  CS2 described his source of supply as "Big Homie".  CS2 described Big

Homie to the interviewing Agents.  CS2 subsequently picked Leon Kavis out of a

six person photo lineup provided by the interviewing Agents as the individual CS2

knew as Big Homie.  Kavis resides in Missoula and has been CS2's source of

supply for approximately two and a half months.  CS2 purchased the seven ounces

of meth seized by Agents for $7,000 from Kavis in Missoula.  CS2 has conducted a

total of five transactions with Kavis ranging from four to nine ounces of meth

purchased by CS2 during each transaction.  CS2 purchased eight ounces directly

from Kavis in Great Falls, on May 31, 2020.  According to CS2, Kavis receives

large quantities of meth from California and distributes the meth in Missoula,
Kalispell, and Great Falls, Montana.

5.      From December 2019 through February 2020, Missoula Police
Department (MPD) Officer Brandon O'Dell and MPD Officer Randy Long with
the Missoula Street Crimes Unit (SCU) interviewed numerous confidential
sources, all who had provided reliable information in the past, regarding Dylan
Mace.  Mace was known by law enforcement to be a large level meth and heroin
supplier in the Missoula area.  Information from each confidential source
corroborated Mace distributing multiple ounce quantities of meth and heroin in
Missoula.

6.      On February 12, 2020, Officer O'Dell obtained and served a state
search warrant for Mace's Facebook account.  In reviewing Mace's Facebook
messenger, Officer O'Dell found several messages indicative of Mace's
involvement in distributing drugs.

7.      On June 24, 2020, Officer O'Dell and Officer Long located Mace at a
gas station in East Missoula, Montana.  Mace, at the time, had active warrants for
his arrest.  Officer O'Dell and Officer Long arrested Mace without incident and
obtained a search warrant for Mace's vehicle and Mace's cell phone.  A small
amount of meth was located inside Mace's vehicle.  A search of Mace's cell phone
by Officer O'Dell resulted in numerous conversations indicative of drug

trafficking.  Officer O'Dell observed a text between Mace and a person Mace had in his phone as "Leon" with phone number (406) 437-8332.  Officer O'Dell was aware of the RCDTF investigation of CS2 in Great Falls and contacted the investigators regarding their case.  RCDTF investigators confirmed that in a search of CS2's cell phone, the number (406) 437-8332 was listed as Big Homie, which matched Kavis' phone number.

8.     A search of additional data in Mace's phone resulted in numerous text messages between Mace and a person identified as Nicole Starkel.  Starkel and Mace discussed distributing drugs.  On May 19, 2020, Mace texted Starkel that his partner owed him "8.5 lbs and he pays me one at a time."  Additional messages in the cell phone between Mace and Kavis indicate Kavis is Mace's partner.  On May 21, 2020, Mace texted Starkel and informed her he had a pound and it would cost $10,000.  Mace referred to slang drug terms in his text messages and referred to a pound of meth as a "p" or an "elbow".  On June 1, 2020, Starkel texted Mace for his "shop" address.  Mace responded that it was at "the corner of Montana St and Clyde St in eastmo" further describing it as "very corner building with the silver dome like shop."  Officer O'Dell identified the building as 501 Montana Avenue in East Missoula.  Mace told other individuals via text message that Mace and Kavis purchased the shop at 501 Montana Avenue in East Missoula.  Upon receiving this information, Agents and officers with the Drug Enforcement Administration

7

(DEA) Missoula High Intensity Drug Trafficking Area (HIDTA) Task Force
placed look-outs on associated addresses for Leon Kavis in Missoula, to include
Kavis' home address of 4112 23rd Avenue South and his shop at 501 Montana
Avenue, as it was determined via text messages and source information that Kavis
was receiving drug shipments in the mail and distributing the drugs to Mace.

9.      On July 29, 2020, the DEA in Billings, Montana, served Federal
Express (Fed Ex) an administrative subpoena regarding all packages sent via Fed
Ex to 501 Montana Avenue in Missoula.  One package sent on July 8, 2020,
weighing four pounds, was addressed to Jazzi at Consumers Choice, 501 Montana
Avenue, Missoula, Montana, (406) 437-8332, and was sent by Jasmin Madsen at
92 Corporate Park RMC in Irvine, California.  Another package sent on July 23,
2020, was addressed to Jazzi at 501 Montana Avenue, Missoula, Montana, (310)
920-9611, and was sent by Stephanie Madsen, 15333 Culver Drive, Suite 340, in
Irvine.  Stephanie Madsen is known by the FBI in Fresno, California as an
individual involved in a large drug trafficking network and utilizes phone number
(310) 920-9611.  On July 29, 2020, a package weighing 22 pounds was also sent to
501 Montana Avenue, Missoula, Montana, (406) 437-8332.  A reliable source of
information from the DEA advised Agents an eight pound shipment of meth was
embedded within the Fed Ex package received by Kavis on July 29, 2020, at 501
Montana Avenue, Missoula, Montana.

8

10.     On August 7, 2020, Officer O'Dell was made aware of a package sent via United Parcel Service (UPS) from Shipping Manager, (949) 863-7071, Mailboxes and More, 92 Corporate Park, Room C, Irvine, CA 92606 to Jazzi, (406) 437-8332, 501 Montana Avenue, Customers Choice, Missoula, Montana by UPS Security personnel.  No signature was required for the package.  Based on the above information, Officer O'Dell applied for a State of Montana Search warrant for the UPS package.

11.     As a result of the search warrant, approximately five pounds of suspected drugs, individually wrapped in five separate quart size containers, were located in the shipping box which was addressed to Kavis' shop with Kavis' phone number listed on the package.  The suspected drugs tested positive for meth.  The meth was submitted to the DEA lab for further testing.

12.     On September 10, 2020, Kavis shot and killed T.J. Kuchinski with a semi-automatic handgun in Flathead County, Montana.  Kavis called 911 subsequent to the shooting and was interviewed by Flathead County Sheriff's Office (FCSO) Detectives.  Upon receiving information that Kavis had killed Kuchinski, MRVCTF SA Trevor Hare and TFO Jeff Perry interviewed witnesses to the shooting and other individuals associated with Kavis as Kavis was suspected of distributing large quantities of meth in Missoula, Kalispell, and Great Falls.  On that same date and other times thereafter, SA Hare and TFO Perry interviewed a

9

Confidential Source (CS3), who wished to remain anonymous for reasons of their own personal safety, regarding Kavis' drug trafficking network. CS3 is under Federal investigation for trafficking meth in the Kalispell area and agreed to cooperate with the investigating Agents. In late August 2020, CS3 witnessed Kavis with approximately one to two pounds of meth along with $30,000 in the front console of Kavis' silver Toyota Tundra pickup in Kalispell. CS3 also observed Kavis with a handgun in his possession as CS3 stated Kavis pointed a semi-automatic handgun at CS3 when CS3 tried to retrieve some belongings at Scott Daniels' residence in Kalispell. Kuchinski, Daniels, and Kavis were all involved in distributing meth as Kavis was the source of supply for Daniels and Kuchinski. CS3 stated the handgun Kavis had in his possession was equipped with a red laser dot sight as Kavis had the dot sight directly on CS3. CS3 stated this was the same type of gun Kavis used to kill Kuchinski.

13.    CS3 heard Kuchinski stole approximately $18,000 in Kavis' drug monies in late August of 2020 as Kuchinski had just got out of prison. According to CS3, this was motive for Kavis to murder Kuchinski. The monies were supposed to be used to purchase meth and Kuchinski just spent the money and failed to pay Kavis, which angered Kavis. At or around the time of the shooting on September 10, 2020, CS3 observed Kavis with approximately $50,000 in cash as Kavis always had large amounts of cash on his person.

10

14.     The shooting death of Kuchinski by Kavis was referred to the

Flathead County Attorney's Office for prosecution by the FCSO.   The Flathead

County Attorney ruled the shooting death of Kuchinski by Kavis to be self-defense

as Kuchinski was armed with a handgun during the altercation.

15.     On September 14, 2020, SA Kroschel and MRVCTF TFO Jared

Cochran interviewed a Confidential Source (CS4), who wished to remain

anonymous and had provided reliable information in the past to law enforcement,

regarding Kavis.  CS4 met Kavis in February of 2020 and identified Kavis as a

large quantity meth dealer who was also involved in dealing smaller quantities of

heroin.  CS4 knew Kavis had traveled to Fresno, California and dealt directly with

the Aryan Brotherhood and the Sinaloa Cartel.  CS4 admitted Kavis provided CS4

with one ounce of meth per week from February of 2020 through July of 2020 for

CS4 to distribute.  CS4 observed Kavis with over 15 pounds of meth at CS4's

residence in May of 2020.  Kavis had the meth wrapped in individual zip lock

packages and stored the packages of meth in a backpack.  Kavis was in possession

of a handgun each time CS4 met with him.  Kavis also had large amounts of cash.

CS4 witnessed Kavis carrying stacks of $100 bills on numerous occasions and at

one time had approximately $30,000 cash in his possession.

16.     On September 22, 2020, SA Hare and DEA SA Kevin Evans

interviewed a Confidential Source (CS5), who wished to remain anonymous and

11

had provided reliable information in the past to law enforcement, regarding Kavis. CS5 advised Kavis was a large level meth dealer residing in Missoula. Kavis and his partner in Missoula have been distributing 20-30 pounds of meth per week in Western Montana and supplied Daniels with meth. CS5 reported Kavis was "hunting" for Kuchinski prior to shooting Kuchinski as Kavis wanted people to know what happened to people who stole from him. CS5 was told by a reliable source Kuchinski stole $34,000 from Kavis and refused to pay it back.

17.    On September 30, 2020, an FBI SWAT Team served a Federal Search Warrant at Scott Daniels' residence in Kalispell. Daniels was arrested on probable cause for Conspiracy to Distribute Methamphetamine. I, along with MRVCTF TFO Guy Baker, transported Daniels to the Kalispell Police Department after SWAT served the search warrant. After Daniels was advised of his rights by the interviewing Agents, he waived his rights and provided the following information. Although Daniels minimized his involvement with Kavis, Daniels stated he purchased approximately 49-60 ounces of meth, for $600 - $700 per ounce, directly from Kuchinski during numerous transactions between from May 2020 through September 2020. Daniels stated Kavis was Kuchinski's source of supply for meth and Kuchinski referred to Kavis as his "homeboy". Kuchinski would usually travel to Missoula or somewhere else to meet Kavis. Daniels stated Kavis killed Kuchinski over a girl as he became jealous of Kuchinski. Daniels was

12

indicted for Conspiracy to Distribute Methamphetamine and is pending trial in

U.S. District Court, Missoula.

18.    In September of 2020, the FBI in Fresno, California, obtained a State

of California Title III court authorization warrant for electronic intercepts of

subjects related to an active FBI case targeting the Aryan Brotherhood, a violent

criminal enterprise operating in California.  The Aryan Brotherhood and their

associates have been involved in violence, drug and firearms trafficking, and

robbery.  From intelligence obtained from the electronic intercept and other

reliable sources, Leon Kavis, utilizing phone number (406) 437-8332, was

identified as a subject who was receiving large shipments of meth in Montana from

members associated with the Aryan Brotherhood.  FBI Fresno applied and was

granted a U.S. District Court, Eastern District of California, authorized Title III

warrant for Kavis' phone, (406) 437-8332.

19.    In addition to numerous conversations indicative of drug trafficking,

Kavis was becoming upset at the FBI for arresting Daniels and investigating the

shooting of Kuchinski and interviewing Kavis's associates in Kalispell and

Missoula.  On October 21, 2020, FBI Fresno intercepted a call from Kavis to

Courtney Harruff, also known as Courtney Wengler, at (406) 212-0368.  Kavis

stated the following during his phone call to Harruff, "All I want to do is take care

of you.  That and kill a bunch of FBI faggots.  I seriously can't wait until they

13

fucking want to talk to me. I'm going to tell them what fucking-cunt pieces of shit their mothers are for raising such fucking dog pieces of shit. I'm gonna eat these motherfuckers up man. I'm going to get indicted for everything. I'm going to nail these cocksuckers. You don't even know...."

20.    On November 9, 2020, members of the MPD, FBI MRVCTF, and the DEA HIDTA arrested a subject on an outstanding arrest warrant from California at the Greyhound Bus Station in Missoula. FBI Fresno provided information based off the Title III intercept regarding this subject being involved in the transport of meth from California to Missoula. The subject's roller suitcase was searched for inventory incident to arrest by the FBI. Inside the subject's suitcase, I located four separate ziplock bags containing approximately one pound of suspected meth in each ziplock, for a total of four pounds. The suspected meth field tested positive for methamphetamine and was secured as evidence.

21.    On November 10, 2020, the subject who had been arrested on the outstanding warrant from California was interviewed by SA Levi Kroschel and TFO Baker. The subject, hereinafter referred to as Confidential Source (CS6), was advised of their Miranda rights and waived their rights, providing the following information. CS6 met Kavis in mid-September when CS5 was directed to travel to Missoula to meet and deliver meth to Kavis by Stephanie Madsen. CS6 had delivered meth to Missoula in the past but had never met Kavis. Madsen is the

14

girlfriend of Kenny Bash, who is a large level drug trafficker in California. Bash is currently in custody but runs his drug enterprise from inside the jail. During the first trip in mid-September, CS6 provided Kavis, and Dylan Mace, Kavis' partner, with 12-14 pounds of meth. Kavis paid CS5 for 10 pounds of meth, which was approximately $50,000. Kavis met CS6 on numerous occasions to purchase one to two pounds at a time. CS6 charged either $5,000 or $6,500 per pound for the meth. Every time CS6 met Kavis in Missoula, Kavis had a semi-automatic handgun on his person and always kept two handguns in his vehicle. Kavis showed CS6 a .40 caliber semi-automatic handgun and a 9mm semi-automatic handgun while in Kavis' shop on Montana Avenue in Missoula.

22.      CS6 made a second trip to Missoula in October but was stopped by law enforcement on October 14, 2020, in Utah and arrested for drug trafficking as the police seized 12 pounds of meth from CS6's vehicle. CS6 spent a few weeks in jail and was released. On November 9, 2020, CS6 met Madsen at a bus station in Los Angeles. Madsen provided CS6 with the suitcase containing the meth to be delivered to Kavis in Missoula. Madsen purchased the ticket to Missoula for CS6 under a fictitious name. CS6 was suspicious as Kavis' sister, Dennie, who lives in Missoula, was trying to reach out to him when he arrived on the bus in Missoula. CS6 believed Dennie was going to set CS6 up to be arrested.

15

23.    CS6 stated Kavis provided CS6 details in which he shot Kuchinski numerous times resulting in Kuchinski's death.  Kavis told CS6 that it went down exactly how Kavis wanted it to go down and then smiled.  CS6 told the investigating Agents it was over a drug debt as Kuchinski owed Kavis either $14,000 or $19,000 as Kavis was robbed of the money by Kuchinski.  Kavis never told CS6 that Kuchinski had a weapon when Kavis shot him.  CS6 believed Kavis likely planted a gun on Kuchinski to make it look like it was self-defense.

24.    An FBI NCIC criminal history check on Leon Kavis Jr., date of birth June 23, 1984, revealed the following.  Kavis' NCIC criminal history report listed Kavis as having three prior felony convictions for Criminal Endangerment, Possession with Intent to Distribute Dangerous Drugs, and Criminal Possession of Dangerous Drugs.

25.    On November 13, 2020 Leon Paul Kavis Jr. was charged per complaint in United States District Court, District of Montana, in Missoula, for 21 U.S.C. 846 Conspiracy to Distribute Methamphetamine – 500 grams or more of a substance containing a detectable amount of methamphetamine, a scheduled II controlled substance, 21 U.S.C. 841 (a)(1) Possession with Intent to Distribute Methamphetamine - 500 grams or more of a substance containing a detectable amount of methamphetamine, and 18 U.S.C. 924(c)(1)(A)(i) Possession of a Firearm in Furtherance of a Drug Trafficking Crime.  These charges are the result

16

of Kavis distributing large amounts of methamphetamine (meth) in Western

Montana from November 2019 through November 9, 2020.

26.     From November 9, 2020, through November 15, 2020, I conducted

surveillance at 501 Montana Avenue in Missoula.  On two different occasions I

observed Kavis' current vehicle, a 2008 silver Toyota Tundra Crewmax bearing

Montana license plate 51-8268B, parked on the west side of the shop.  On

November 15, 2020, I observed this same vehicle parked at 4112 23rd Avenue

South in Missoula, the residence of Kavis' wife, Molly Kavis.  Kavis has been

observed driving the above vehicle by MPD Street Crimes Unit and MRVCTF

personnel over the last six months.

27.     FBI open source data checks revealed 501 Montana Avenue is owned

under a Limited Liability Company, MMIC LLC.  MMIC LLC has post office box

addresses in San Clemente, California, and Missoula, Montana.

### AUTHORIZATION REQUEST

28.     Based on the foregoing, Affiant submits that there is probable cause to

search the premises referenced above in Paragraph 4 and below in Attachment A,

for the items referenced in Attachment B.  Based on the information outlined

above, Affiant is seeking permission from the Court to authorize a no-knock entry,

at any time of the day or night for the search of Leon Kavis' shop at 501 Montana

Avenue, Missoula, MT 59802.

17

29.     The evidence I have reviewed indicates Leon Kavis is involved in the

trafficking of large amounts of methamphetamine and is armed with numerous

firearms.  Leon Kavis is in the possession of firearms capable of injuring and

killing law enforcement personnel and has made threats to kill FBI Agents if

confronted.  In addition, Kavis' shop is equipped with surveillance cameras and is

located in a neighborhood which is well concealed and unfriendly to law

enforcement.  In Affiant's experience, allowing a tactical team to be able to adjust

their time line to isolate the structure during nighttime hours and to prevent the

escape or the ability for the occupants to gain tactical advantage is instrumental in

the safety of Agents and officers in the execution of an arrest and search warrant.


Respectfully submitted,

Monte Shaide
Special Agent
Federal Bureau of Investigation


Subscribed and sworn to before me on November 17, 2020

Hon. Kathleen S. DeSoto
United States Magistrate Judge
Missoula, Montana

18

## ATTACHMENT A – PLACES TO BE SEARCHED

A sheet metal Quonset-style garage shop located at 501 Montana Avenue, Missoula, Montana, at the intersection of Clyde Street and Montana Avenue. The property contains a Quonset-style garage shop structure with silver sheet metal siding and a metal-style composition roof. There is a white roll-up vehicle door located on the west side of the structure facing Clyde Street. Just to the right of the roll up door is a wooden sign with the numbers 501 written on the front. Two chimneys for exhaust and ventilation are attached to the shop and visible on both sides of the roll up door. Affixed to the right of the roll up door are two security cameras mounted into the building. On the east side of the structure is a brown metal door, which does not appear to be used. Scattered around the outside of the structure are old tires, vehicles, and large container barrels near the east and west entrances of the structure.

19





20

## ATTACHMENT B – ITEMS TO BE SEIZED

1.      The contents of any safes or secured/locked containers;

2.      Any identification such as drivers' licenses, credit cards, birth certificates, and/or social security cards;

3.      Weapons, to include, firearms, knives, explosives, bullets, casings, and any other items used to cause injury and death;

4.      Drugs, to include methamphetamine and any other controlled substances in violation of United States Code Title 21;

5.      Drug paraphernalia, to include scales, pipes, bongs, syringes, spoons with drug residue, bindles, and/or baggies;

6.      Any items used in the distribution or accounting of the sale, trafficking, and/or possession of illegal drugs, such as scales, books, records, receipts, notes, ledgers, cell phones, and computer tablets;

7.      Records of travel, to include papers, tickets, maps, notes, schedules, credit card receipts, rental car receipts, other receipts, and/or items relating to foreign or domestic travel;

8.      Address books, telephone books, and papers reflecting the names of, the addresses for, and/or telephone numbers of co-conspirators and/or persons to whom dangerous drugs have been delivered to or obtained from;

1

9.     Documents and/or papers which may aid in the identification and location of customers, suppliers, and/or co-conspirators in the possession and distribution of dangerous drugs;

10.    Records of drug transactions including lists of customers, suppliers, expenses, payments, and dangerous drug prices;

11.    Proceeds of dangerous drug sales, to include United States currency; precious metals; jewelry; financial instruments including but not limited to stocks, bonds, and real property; and/or anything else of value furnished or intended to be furnished in the exchange of controlled substances in violation.

12.    Photographs and/or video or digital of co-conspirators, assets, and/or controlled substances; and

13.    Documents which may aid in the identification of and/or aid in locating controlled substances and/or proceeds from drug transactions to include but not limited to safety deposit box records, storage unit receipts, and rental agreements.